# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED

MAR 2 7 2008

3-27-2008

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

|  |  |
|---|---|
| **LAMAR C. CHAPMAN III,** | ] |
| | ] |
| *Plaintiff,* | ] **CASE NUMBER: 07-CV-7232** |
| | ] |
| -vs- | ] |
| | ] Honorable George W. Lindberg |
| **THE VILLAGE OF HINSDALE,** | ] *Senior U.S. District Judge Presiding* |
| **ILLINOIS** *an Illinois Municipal* | ] |
| *Corporation*; **THE HINSDALE POLICE** | ] Honorable Geraldine Soat Brown |
| **DEPARTMENT, and UNKNOWN** | ] *Magistrate Judge* |
| **OTHERS,** | ] |
| *Defendants.* | ] |

## MOTION FOR LEAVE TO FILE
## FIRST AMENDED COMPLAINT INSTANTER

*NOW COMES PLAINTIFF*, Non-Attorney, Non-Lawyer, *Pro Se* and pursuant to

Rule 6(b) of the Federal Rules of Civil Procedure respectfully move this Honorable Court

to allow the Plaintiff to file the attached First Amended Complaint, *Instanter* or in the

alternative, *Nunc Pro Tunc*, March 27, 2008, and for this Honorable Court to make a

reasonable decision, states as follows:

1.      On Wednesday, March 19, 2008, this Honorable Court generously granted

the unrepresented Plaintiff's oral motion for leave to file a First Amended Complaint

within five (5) days on Monday, March 24, 2008.

2.      On Wednesday, March 19, 2008, Plaintiff left Court and went to Saint

Frances Hospital in Blue Island, Illinois to be with his wife, and to bring her home after a

surgical procedure.

3.      In addition to carrying for his wife, Plaintiff has given the finalization of

his First Amended Complaint the priority attention that it deserves, but was unable to

complete the same until today.

4.      Plaintiff's First Amended Complaint is three (3) days late.

1

5.    Plaintiff has served counsel for the Defendants with a copy of this motion and the First Amended Complaint.  To grant this motion will not prejudice any party to this litigation.

*WHEREFORE*, Lamar C. Chapman III, Non-Attorney, Non-Lawyer, *Pro Se*, respectfully prays that this Honorable Court will allow for the *instanter* filing of his First Amended Complaint, or in the alternative a March 27, 2008, *Nunc Pro Tunc* filing and for such additional relief that is morally and lawfully warranted.  GOD BLESS THIS HONORABLE COURT.

Very Respectfully submitted,

_____
LAMAR C. CHAPMAN III, Plaintiff, *Pro Se*

**DATED: March 27, 2008**

Non-Attorney, Non-Lawyer
Plaintiff, *Pro Se*
LAMAR C. CHPMAN, *Solo Fides*
Alexander, Cavanaugh & Block, LLC
1314 Kensington Road
Post Office Box 5232
Oak Brook, IL 60523-5232
Telephone (630) 881-1936
Email: lasallecompanies@aol.com

RECEIVED

MAR 2 7 2008
3-27-2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LAMAR C. CHAPMAN III, ]
]
*Plaintiff,* ]
]
-vs- ]
]
THE VILLAGE OF HINSDALE, ]
ILLINOIS *an Illinois Municipal* ]
*Corporation*; THE HINSDALE POLICE ]
DEPARTMENT, and UNKNOWN ]
OTHERS, ]
*Defendants.* ]

CASE NUMBER: 07-CV-7232

Honorable George W. Lindberg
*Senior U.S. District Judge Presiding*

Honorable Geraldine Soat Brown
*Magistrate Judge*

## FIRST AMENDED VERIFIED COMPLAINT

Lamar C. Chapman III, ("Plaintiff"), Non-Attorney, Non-Lawyer, *Pro Se*,

complains of the Village of Hinsdale ("Village") and Hinsdale police officers Lawrence

Bloom ("Chief Bloom"); Kevin Simpson ("Deputy Chief Simpson"); Detective Charles

Leuver, ("Detective Leuver"); Diane Heath ("Heath"); and John Doe Officers ("John

Does") as follows:

## JURISDICTION AND VENUE

1.    Jurisdiction is proper in this Court pursuant to 28 U.S.C., Section 1331

and 28 U.S.C., Section 1343 because this action arises under the laws of the United

States, specifically the United States Constitution, the First, Fourth, Fifth, Eighth, and

Fourteenth Amendments to the United States Constitution, 42 U.S.C., Section 1983 and

42 U.S.C., Section 1988. This Court has pendant jurisdiction over Plaintiff's state law

claims pursuant to 28 U.S.C., Section 1367.

2.    Venue is proper in this District pursuant to 28 U.S.C., Section 1391(b)

because defendants reside in this District and because the activities giving rise to this

cause of action occurred in this District.

## INTRODUCTION AND BRIEF HISTORY OF
## RACIALLY BASED UNCONSTITUTIONAL
## AND RETALITORY CONDUCT

3.     This lawsuit is intended to redress the intentional and fundamental violations of Plaintiff's civil rights.  It is apparent that the Defendants "have a real zeal for justice that is not in accordance with the law."  Plaintiff's constitutional rights were grossly suspended and violated for retaliatory purposes only to teach the Plaintiff a lesson or to "make an impression" on the African-American Plaintiff.  For example, Plaintiff has been incarcerated in a maximum security institution for ten and one half (10 ½) months on a six (6) month sentence that has never amounted to a state or federal crime or state or federal jurisdiction on nothing more than the "say so" authority of a vindictive federal employee.

4.     Plaintiff was arrested by local law enforcement officers without any state or federal arrest warrant or any other legal authorization.  Plaintiff's residence was broken into under the color of law; searched without a warrant, permission or legal authorization and precious jewelry in the form of a thirty (30) year old wrist watch collection containing eight (8) gold watches were seized, stolen and removed from Plaintiff's residence.

5.     Defendants herein refused to take Plaintiff's 911 emergency telephone call for residential burglary; refused to send a patrol car to the Plaintiff's residence in accordance with well-settled Village policy to facilitate a police report; and after forcing the Plaintiff to wait more than twelve (12) months, Defendants took Plaintiff's complaint only after Plaintiff lobbied local state and federally elected officials and held a personal conference with Defendant Lawrence Bloom.  Thereafter, Defendants filed what amounts to a false and unconstitutional police incident report.

2

## SUMMARY OF ACTION

6.      During the week of April 1, 2005, through and including April 8, 2005, as publicly announced by Mr. Alberto Gonzales, the United States Attorney General and the United States Justice Department in cooperation and conjunction with The Village of Hinsdale, state, county and local law enforcement agencies throughout the United States commenced a nationwide sweep and code named "Operation Falcon." According to figures provided by the United States Justice Department and the Attorney General for the United States as broadcasted in its April 9, 2005, News Conference, during this week, more than 10,800 violent offenders with outstanding felony warrants were arrested nationwide.

7.      For racially motivated and racially retaliatory reasons the Plaintiff was purportedly placed on the "Operation Falcon" outstanding warrant fugitive list without any warrant or any authorization of any state or federal judge or magistrate. See, June 7, 2005, Livescan correction form Livescan Chicago (CHRISC) DCN# 016205654 and Livescan State Police (BFI), TCN# LS10000 7016205654, "NOT A WARRANT" change as executed by the Franklin Park Police Department to correct the false and facially fraudulent Federal Arrest Warrant Number 04-cr-307-1, *attached hereto as* **Exhibit A** *and respectfully made a part hereof.*

8.      Based on information and belief, this legally void, false and facially fraudulent warrant and its correlating "local law matter" criminal case was placed on the African American, Plaintiff for his outspoken and political lobbying against certain local federal employees for their civil injustice and "weaponization" of our system of justice over the past twenty-four (24) uninterrupted years.

9.      As a result and in retaliation for Plaintiff filing a written complaint against Mr. David Pearlman, an Internal Revenue Service Debt Collector, with the Waukegan

3

Police Department; and his removal (criminal trespass to property) from the Waukegan, Illinois Corporate Offices of Plaintiff's former business advisement clients; and for filing a written complaint with Ms. Diane Heath, his local supervisor with the Internal Revenue Service Office of the Inspector General for Mr. Pearlman's unlawful conduct, Plaintiff was knowingly and intentionally constitutionally violated.

10.     Defendants herein, although fraudulently misled by certain local federal employees, conspired with the same and under the color of law deliberately conspired and intentionally failed to provide the African American, Plaintiff with basic and fundamental village and police services, including but not limited to filing a false and slanderous or defamatory one year late, Hinsdale Police Department Incident Report; unlawfully overlooking or excusing the criminal act of aggravated residential burglary; violating Plaintiff's absolute constitutional rights to due process; and equal protection under the law.

## THE PARTIES

11.     **The Village of Hinsdale**. Defendant the Village of Hinsdale is a municipal corporation organized and existing under the constitution of the State of Illinois. The Village maintains the Hinsdale Police Department ("Police Department") to enforce the laws of the State of Illinois, to ensure the public safety and to maintain order.

12.     **Lawrence Bloom**. Defendant Lawrence Bloom is a police officer with the Village currently serving as Police Chief. At times relevant herein, Defendant Bloom has acted as Police Chief and is being sued in his personal and individual capacity.

13.     **Charles Leuver**. Defendant Charles Leuver is a police officer with the Village currently serving as an investigator and detective in its burglary division. At times relevant herein, Defendant Leuver has acted as an investigator and is being sued in his personal and individual capacity.

4

14.    **Kevin Simpson.**  Defendant Kevin Simpson is a police officer with the Village currently serving as Deputy Police Chief.  At times relevant herein, Defendant Simpson has acted as Deputy Police Chief and is being sued in his personal and individual capacity.

15.    **Diane Heath.**    Defendant Diane Heath is a federal employee with the United States Department of the Treasury, Office of Inspector General, located in Chicago, Illinois and admits in a federal report to being in the Plaintiff's residence to effectuate Plaintiff's warrantless arrest and is being sued in her personal and individual capacity.

16.    **John Doe Officers**.  Defendants John Doe is a police officer with the Village currently serving as uniformed patrolmen.  At times relevant herein, Defendant John Doe have acted as patrolmen who came upon the residence of the Plaintiff and searched the same or assisted in the searching of the same without warrant, permission or legal authorization.

## PUBLIC RECORD AND *PROFACTO* BACKGROUND

17.    Plaintiff, a highly decorated African American; an alumnus of the United States Naval Academy, recipient of a Presidential Appointment (*Richard Milhous Nixon*); Congressional Nomination (Honorable William L. Dawson); Gubernatorial Military Commission (*Honorable Richard B. Ogilvie*); and Judicial Appointment (*Honorable Frances Barth, Circuit Court of Cook County, Illinois*) is Chairman and Chief Executive Officer of Christopher LaSalle and Company and LaSalle Companies, business advisement and holding firms and founder of the same on February 15, 1980, and on October 13, 1982, respectively.

18.    On October 14, 1986, this Court, Honorable Milton I. Shadur, Senior Judge presiding over a petition to pierce Plaintiff's Corporate Vail, denied said petition

5

and this Court found "Mr. Chapman to be ingenious." *See Civil Case Number 86 CV 6001, by reference made a part hereof.*

## CAMPAIGN OF CIVIL RIGHTS DEPRIVATION
## AND RETALIATION AGAINST THE PLAINTIFF

19.    On Friday, February 4, 2005, Plaintiff was denied the requested benefit of counsel in a criminal proceeding in the United States District Court, for the Northern District of Illinois, Eastern Division, Honorable James B. Zagel, judge presiding.

20.    Also, on Friday, February 4, 2005, Plaintiff requested from the Court leave to amend Plaintiff's scheduled February 7, 2005, surrender date to the Maximum Security United States Penitentiary located in Terre Haute, Indiana to be arrested on said date in lieu of an unconstitutional surrender. From the Bench, the Court granted Plaintiff's request to be arrested. *See, February 7, 2005, Report of Proceedings, by reference made a part hereof.*

21.    On Monday, February 7, 2005, Plaintiff made himself available to be arrested by the United States Marshal who failed to arrest the Plaintiff because a warrant for said arrest had not been issued or entered by any Court of Law.

22.    On Monday, February 14, 2005, a Federal Arrest Warrant was prepared by Ms. Michelle Warner, Clerk of the United States Marshal Service. See, **Exhibit, A,** *attached hereto and made a part hereof as a true and correct copy of said judicially unexecuted warrant.*

23.    Also, on Monday, February 14, 2005, Ms. Michelle Warner, Clerk of the United States District Court immediately submitted to the Federal Bureau ("FBI") of Investigations International Warrant Bureau, said warrant without authorization of any judge of the Court **Exhibit A.**

6

24.     On and after Monday, February 14, 2005, Plaintiff's name, identity, personal information and purported warrant were placed on the international file held with the Federal Bureau of Investigations without authorization of a judge of any Court.

25.     Prior and subsequent to Monday, February 14, 2005, there have never been any Search Warrants or Seizure Orders, executed by any judge of any court or placed with any state, federal or local law enforcement agency.

26.     On or before April 8, 2005, Plaintiff's name was place on the United States Marshal's list of wanted fugitives under the code name of "Operation Falcon."

27.     On or before April 8, 2005, Plaintiff's residence was placed under surveillance by Defendants.

28.     On or about April 8, 2005, Defendant John Doe and unknown other officers of the Hinsdale Police Department went to the gated community of Plaintiff's residence and questioned the gatehouse guards and security management on the whereabouts of Plaintiff.

29.     On April 8, 2005, Defendants were advised by the gatehouse guards and security management that the Plaintiff and his wife had left for the day and Plaintiff's residence was unoccupied.

30.     On April 8, 2005, at the approximate hour of 6:00 a.m., Defendants Bloom and Simpson, as policy makers for the Village of Hinsdale Police Department authorized John Doe officers to place a ladder on the side of Plaintiff's five (5) story condominium building and along with assistance of United States Marshals cut the screen on the second (2nd) floor veranda and entered Plaintiff's private residence.

31.     On Monday, April 8, 2005, Defendants with the assistance of United States Marshal with guns drawn entered Plaintiff's residence, thoroughly searched and ransacked the same.

7

32.     On Monday, April 8, 2005, Defendants looked under the Plaintiff's mattress.

33.     On Monday, April 8, 2005, Defendants looked into Plaintiff's refrigerator and freezer.

34.     On Monday, April 8, 2005, Defendants searched Plaintiff's closets.

35.     On Monday, April 8, 2005, Defendants looked into Plaintiff's storage area.

36.     On Monday, April 8, 2005, Defendants searched Plaintiff's garage.

37.     On Monday, April 8, 2005, Defendants interrogated Plaintiff's neighbors regarding the whereabouts of Plaintiff.

38.     On Monday, April 8, 2005, Defendants located a jewelry box intentionally hidden by Plaintiff between the house plants on top of Plaintiff's seven (7) foot sweater armoire.

39.     On Monday, April 8, 2005, Defendants opened the wooden jewelry box and found eight (8) expensive antique and modern collectible gold watches located on top of the seven (7) foot sweater armoire.

40.     On Monday, April 8, 2005, Defendants seized and removed said gold watches from Plaintiff's residence.

41.     Plaintiff did not or has never given anyone permission to enter or to search his residence.

42.     On or before Monday, April 8, 2005, public records are absent of any Arrest Warrant for Plaintiff's arrest.  See, **Exhibit, A**, *attached hereto and made a part hereof.*

43.     On or before Monday, April 8, 2005, public records are absent of any Search Warrant for Plaintiff's residence.

8

44.     On or before Monday, April 8, 2005, public records are absent of any written authorization of any Seizure Order for Plaintiff's property removed from Plaintiff's residence.

45.     On or before Monday, April 8, 2005, public records are absent of any written authorization given by the Plaintiff allowing for the entry to the Plaintiff's residence; search of the Plaintiff's residence; or any seizure of Plaintiff's property.

46.     On Monday, April 8, 2005, Plaintiff telephoned the Village of Hinsdale Police Department to report residential burglary.

47.     On Monday, April 8, 2005, the Village of Hinsdale Police Department's dispatchers transferred the telephone call to Defendant Lawrence Bloom.

48.     On Monday, April 8, 2005, Defendant Lawrence Bloom refused to send a patrol car to the Plaintiff's residence to take Plaintiff's complaint for residential burglary.

49.     Based on information and belief Plaintiff was treated with indifference because of his African American race.

50.     Based on information and belief, Plaintiff and his wife are the only African Americans residing in the subdivision of Plaintiff's residence.

51.     On Monday, April 8, 2005, Defendant Bloom under the color of law advised the Plaintiff to report to the Village of Hinsdale Police Department and to see only himself or Deputy Police Chief Defendant Kevin Simpson to sign a complaint for residential burglary.

52.     On or about Tuesday, April 9, 2005, Plaintiff sent Defendant Bloom a written letter memorializing the fact that the Plaintiff's residence had been burglarized, by referenced made a part hereof.

53.     On or after Tuesday, April 9, 2005, Plaintiff sent correspondence to the United States Senate, Judiciary Subcommittee; Senators Richard Durbin and Barack

9

Obama; Congresswoman, Judith Bigget; and DuPage County State's Attorney Joseph Berkett to admonish Defendants to allow the Plaintiff to even file a police report for theft or aggravated residential burglary.

54.     On and after Tuesday, April 9, 2005, Defendants refused to allow the Plaintiff to file a complaint for residential burglary.

55.     Defendants failed to come to Plaintiff's residence to take pictures of the crime scene.

56.     Defendants failed to come to Plaintiff's residence to take finger prints of the cut, second floor screened-in veranda on Plaintiff's residence.

57.     Defendants failed to accord Plaintiff his right to due process.

58.     Defendants failed to accord Plaintiff his right to equal protection under the law.

59.     Plaintiff has been denied privileges and freedoms guaranteed by the United States Constitution without due process of law.

60.     Defendants' conduct was intentional and calculated to violate the Plaintiff's constitutional rights under the law.

61.     Plaintiff has suffered monetary damages as a result of Defendants' unconstitutional conduct.

62.     Plaintiff has suffered emotional pain and suffering as a result of Defendants' unconstitutional conduct.

63.     Plaintiff has suffered damage to his good name and reputation as a result of Defendants' unconstitutional conduct.

64.     On May 10, 2006, Plaintiff personally went to the Hinsdale Police Department to speak to the Chief of Police regarding his inability of filing a police report.

10

Defendant Bloom met with the Plaintiff and stated that he was just about to telephone the Plaintiff.

65.     On May 10, 2006, Defendant Bloom summoned Non-Defendant, Hinsdale Police Officer Steve Ruban and authorized the same to take a delayed incident report for residential burglary. Said incident report was assigned a case number and listed a suspect with an estimated loss of property in the sum of twenty three thousand, two hundred, and ninety ($23,290.00) dollars. *See redacted in security and privacy parts, the attached* "Approved" Hinsdale Police Department Incident Report attached hereto as **Exhibit C,** *and made a part hereof.*

66.     Also, on May 17, 2006, Defendant Charles Leuver, filed a follow-up incident report, erroneously describing the loss of property as only one Daniel Richards Men's Wristwatch in the estimate value of thirty-nine hundred ($3,900.00) dollars and stating that based on the federal employees who admitted to being in the Plaintiff's residence because they heard music playing that the "criminal trespass on April 8, 2005, was unfounded" "…and that he was suspicious of Plaintiff for the fact that a crime was being reported over a year later."

67.     Also on May 17, 2006, Defendant Leuver, falsely and intentionally found that the federal employees had legal authority to be in Plaintiff's residence because there was an active arrest warrant for Plaintiff.

68.     Also, on May 17, 2006, Defendant Leuver, falsely and intentionally reported in the public incident report that he believed that Plaintiff is filing a false report but do not have the evidence to support that [charge], belief. *See May 17, 2006, Hinsdale Police Department Follow-up Incident Report by reference made a part hereof.*

69.     Also, on May 17, 2006, Defendant Leuver, falsely found that the federal employees had followed "protocol" by searching Plaintiff's residence and garage without

11

any search warrant and based on the "say so" of certain federal employees. *See May 17, 2006, Hinsdale Police Department Follow-Up Incident Report by reference made a part hereof.*

70.     On February 7, 2008, Plaintiff contacted Defendant the Village of Hinsdale under the Illinois Freedom of Information Act and inquired about the names, badge numbers of any and all police officers who acted as backup and assisted the federal government in "Operation Falcon" on April 8, 2005, and who came upon the Plaintiff's residence.

71.     On February 12, 2008, Defendant Simpson, responded in writing to said request and provided knowingly false information to the Freedom of Information Request.

72.     On February 12, 2008, Defendant Simpson disregarded the actual questions sought in the Freedom of Information Request and supplied information that Plaintiff neither requested nor needed.

73.     On information and belief Defendant Simpson's actions were deliberately calculated to deceive the Plaintiff.

74.     On information and belief Defendant Simpson's actions violated Plaintiff's rights to due process.

75.     On information and belief Defendant Simpson's actions violated Plaintiff's rights to equal protection under the law.

76.     Plaintiff has suffered monetary damages as a result of Defendant Simpson's unconstitutional conduct.

77.     Plaintiff has been denied privileges and freedoms guaranteed by the United States Constitution without due process of law.

12

78.    Plaintiff has suffered emotional pain and suffering as a result of Defendant Simpson's unconstitutional conduct.

79.    Plaintiff has suffered damage to his good name and reputation as a result of Defendant Simpson's unconstitutional conduct.

80.    Plaintiff has been denied liberty and liberty rights without due process as a result of Defendant Simpson's unconstitutional conduct.

## POLICE DEPARTMENT'S AND VILLAGE CUSTOM AND POLICY

81.    Prior to and during all relevant time, area Village residents had filed complaints regarding the intimidating and retaliatory conduct by the Police Department for their having exercised their right of free speech. These complaints specifically referenced area Police Chiefs and Deputy Police Chiefs.

82.    It is the custom and policy of the Police Department and Village to retaliate against persons whose speech, politics or nationality the Defendants perceive to be in opposition to the political leadership of the Village.

83.    This custom and policy of the Police Department and Village was made by policy-making authority within the Village. The Village and policy-making authority within the Village knew this custom and policy was violative of Plaintiff's constitutional rights and recklessly disregarded those rights.

84.    Private citizens were also subjected to this custom and policy. In the federal lawsuits on the Docket of the Clerk of the Court, local lawsuits contain allegations of retaliation by the Village for parties having exercised their rights to free speech.

85.    The harassment and intimidation of Plaintiff as alleged above was done at the direction and with the knowledge of the policy makers within the Police Department and the Village.

13

86.    Chief Lawrence Bloom and Deputy Chief Simpson were policy makers.

87.    Moreover, the conduct of intimidating and retaliating against persons who exercise their right of free speech was a persistent practice within the Police Department, Defendants and policymaking officials of the Village knew that the Defendants' conduct was violative of Plaintiff's constitutional rights.  Defendants and policy makers acted with reckless and racial indifference toward this conduct and were aware of and approved this conduct.

88.    As a result of Plaintiff having not supported Chief Blooms unlawful request to appear at the Village of Hinsdale Police Department and having otherwise exercised Plaintiff's constitutionally guaranteed freedom of speech on matters of public concern as described herein, an official campaign of racial harassment, intimidation and retaliation was undertaken by Defendants against Plaintiff.

89.    Defendants' conduct violated Plaintiffs' clearly established constitutional and statutory rights of which Defendants were aware or reasonably should have been aware.

90.    There was at all time relevant herein a statute in the United States Code providing, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C., Section 1983

91.    As a result of Defendants' conduct, Plaintiff have suffered loss of employment, loss of business income, extreme humiliation and embarrassment, anxiety, trauma, stress, emotional distress, sleep deprivation, ostracism by former clients, colleagues and business associates, diminished reputation in the community and in

14

business, diminished earning capacity and impaired Plaintiff's exercise of his constitutional right to free speech and association. The conduct has permanently and adversely affected Plaintiff's life, career, ministry, family and future.

## COUNT I

### INJUNCTIVE RELIEF

92.    Plaintiff alleges paragraphs one through ninety-one as if alleged herein and continues as follows:

93.    Plaintiff has been harassed and will continue to be harassed unless this Court orders the parties to have no contact with each other outside these legal proceedings or pending further order of court.

94.    Plaintiff is unable to utilize the emergency public resources of the Village of Hinsdale, including police protection as withheld herein and seeks injunctive relief to further the interest of justice and to assure that no harm will come to the African American Plaintiff, his wife, their children or grandchildren.

95.    To grant Plaintiff's request for injunctive relief will further the interest of justice and will not harm any party to this civil rights lawsuit.

*WHEREFORE*, Plaintiff respectfully request that an order for injunctive relief is entered and that all Defendants or their agents or designated representatives are barred from engaging in any contact with the Plaintiff outside of these legal proceedings pending further order of court.

## COUNT II

### VIOLATION OF FOURTH AMENDMENT
### UNITED STATES CONSTITUTION – 42 U.S.C., Section 1983

96.    Plaintiff alleges paragraph one through ninety-five as if alleged herein and continues as follows:

97.    Plaintiff has had his personal property and possessions searched without a warrant, permission or legal authorization.

98.    Defendants have intentionally violated provisions of the United States Constitution which prohibits the search and seizure without a warrant, permission or legal authorization.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

A.    Defendants are adjudged to have violated or caused the violation of Plaintiff's constitutional rights and each Defendant in their individual capacity are ordered to pay compensatory damages in excess of one million dollars or such greater amount to be determined by the Court;

B.    Plaintiff is awarded exemplary damages;

C.    Plaintiff is awarded punitive damages in excess of five million dollars or such greater amount to be determined by the Court from each Defendant;

D.    Statutory damages as allowed by the law; *and*

E.    Such further relief as authorized by law including court costs and fees and functional equivalent of attorney fees.

## COUNT III

### VIOLATION OF FIFTH AMENDMENT
### UNITED STATES CONSTITUTION – 42 U.S.C., Section 1983

99.    Plaintiff alleges paragraph one through ninety-eight as if alleged herein and continues as follows:

100.    Plaintiff has had his personal liberty restrained without warranty, legal authorization or due process of law.

101.    Plaintiff's access to a public facility in the form of the Hinsdale Police Department was knowingly and intentionally restrained by all of the Defendants.

16

102.    Defendants have intentionally caused Plaintiff personal damages as a result of their actions and have intentionally violated provisions of the Fifth Amendment of the United States Constitution.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

A.    Defendants are adjudged to have violated the Fifth Amendment of the United States Constitution and each Defendant is ordered to pay compensatory damages in their individual capacity in a sum in excess of five million dollars or such greater amount to be determined by the Court.

B.    Defendants are ordered to pay exemplary damages;

C.    Defendants are ordered to pay punitive damages in excess of five million dollars or such greater amount to be determined by this Court;

D.    Statutory damages as allowed by law; and

E.    Such other relief as allowed by law including court costs, fees and the functional equivalent of attorney fees.

## COUNT IV

## VIOLATION OF THE EIGHT AMENDMENT
## UNITED STATES CONSTITUTION – 42 U.S.C., Section 1983

103.    Plaintiff alleges paragraph one through one hundred and two as if alleged herein and continues as follows:

104.    Plaintiff has been intentionally treated by Defendants in violation of the laws that prohibit cruel and unusual punishment.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

A.    Defendants are adjudged to have violated the Eight Amendment of the United States Constitution and each Defendant is ordered to pay compensatory damages

17

in an amount in excess of five million dollars or such greater amount to be determined by the Court;

      B.    Exemplary damages;

      C.    Defendants are ordered to pay punitive damages in excess of twenty-five million dollars or such greater amount as ordered by the Court;

      D.    Statutory damages as allowed by law; *and*

      E.    Such further relief as allowed by law including court costs, fees and the functional equivalent of attorney fees.

## V.

## VIOLATION OF FIRST AMENDMENT
## THE UNITED STATES CONSTITUTION – 42 U.S.C., Section 1983

105.    Plaintiff alleges paragraphs one through one hundred and four as if alleged herein and continues as follows:

106.    Defendants' conduct was intended to harass, intimidate and retaliate against Plaintiff for his exercise of his constitutionally protected right to freedom of speech. Plaintiff's speech was a substantial motivating factor for Defendants' wrongful conduct.

107.    Plaintiff's speech concerned matters of political public concern and, as such, constitutes the highest degree of speech protected by the First Amendment.

108.    Defendants' conduct deprived the African American Plaintiff of his First Amendment right to freedom of speech. The complained-of-conduct by Defendants occurred under the color of state law.

109.    Defendants acted with reckless disregard and with actual malice to deprive Plaintiff of his rights guaranteed under the United States Constitution.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

18

A.    Defendants are adjudged to have violated the First Amendment of the United States Constitution and each Defendant is ordered to pay compensatory damages in an amount in excess of five million dollars or such greater amount to be determined by the Court;

B.    Defendants are ordered to pay punitive damages in excess of twenty-five million dollars or such greater amount as ordered by the Court;

C.    Exemplary damages;

D.    Interest on compensatory damages at a rate set by law for Plaintiff's costs including the functional equivalent of attorney fees as authorized by 42 U.S.C., Section 1988; *and*

E.    For such further relief as allowed by law.

## VI

### COUNT SIX
### VIOLATION OF THE FOURTEEN AMENDMENT
### UNITED STATES CONSTITUTION – 42 U.S.C., Section 1983

110.    Plaintiff alleges paragraphs one through one hundred and nine as if alleged herein and continues as follows:

111.    By applying for a police incident report to the Village of Hinsdale Police Department Plaintiff exercised his right under the Due Process Clause of the Fourteenth Amendment.

112.    By seeking information *via* the Illinois Freedom of Information Act with the Village of Hinsdale Police Department Plaintiff exercised his right under the Due Process Clause of the Fourteenth Amendment.

113.    By refusing to allow Plaintiff to file an incident report or to condition the filing of a police incident report upon surrendering for a warrantless arrest by Defendants

Lawrence Bloom and Kevin Simpson unlawfully retaliated against the Plaintiff for the exercise of his rights under the Due Process Clause of the Fourteen Amendment.

114.    Despite knowing that Plaintiff's constitutional deprivation was motivated by Defendants and other "Operation Falcon" law enforcement participants' desire to retaliate against the Plaintiff for exercising his Due Process right to file a police incident report and all Defendants acquiesced and/or agreed to the deprivation in violation of Plaintiff's Due Process rights under the Fourteenth Amendment.

115.    Despite knowing that Plaintiff's constitutional deprivation was motivated by Defendants and other "Operation Falcon" law enforcement participants' desire to retaliate against the Plaintiff for exercising his Due Process right to receive an honest and truthful investigate report and all Defendants acquiesced and/or agreed to the deprivation in violation of Plaintiff's Due Process rights under the Fourteenth Amendment.

116.    Despite knowing that Plaintiff's constitutional deprivation was motivated by Defendants and other "Operation Falcon" law enforcement participants' desire to retaliate against the Plaintiff for exercising his Due Process right to seek accurate, honest and truthful information *via* the Illinois Freedom of Information Act and all Defendants acquiesced and/or agreed to the deprivation in violation of Plaintiff's Due Process rights under the Fourteenth Amendment.

117.    The false, malicious, and retaliatory acts of the Defendants have resulted in extreme humiliation and embarrassment to Plaintiff and have diminished his reputation in his residential, business and spiritual community.

118.    The acts of the Defendants have resulted in the denial of Plaintiff's business income and other related benefits, other economic damages, and emotional pain and suffering.

20

119.   The acts of the Defendants deprived Plaintiff of his Fourteenth Amendment rights which protects Plaintiff's conduct in exercising his due process rights.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

A.   Defendants are adjudged to have violated the Fourteenth Amendment of the United States Constitution and each Defendant is ordered to pay compensatory damages in an amount in excess of five million dollars or such greater amount to be determined by the Court;

B.   Defendants are ordered to pay punitive damages in excess of twenty-five million dollars or such greater amount as ordered by the Court;

C.   Exemplary damages;

D.   Statutory damages as allowed by law; and

E.   Such further relief as allowed by law including court costs and fees and the functional equivalent of attorney fees as authorized by 42 U.S.C., Section 1988.

## VII

### COUNT SEVEN
### CONSPIRACY (42 U.S.C., Section 1983)

120.   Plaintiff alleges paragraphs one through one hundred and nineteen as if alleged herein and continues as follows:

121.   Defendants acting together and under the color of law, reached an understanding and agreement, engaged in a course of conduct, and otherwise conspired among and between themselves and with other unnamed and/or unknown co-conspirators, to deprive Plaintiff of his Constitutional rights, and did deprive Plaintiff of his Constitutional rights, as alleged herein, including his rights to be free from retaliation for exercising his right to free speech, as protected by the First Amendment, Due Process and Equal Protection of the laws as guaranteed by the Fourteenth Amendment.

21

122.    In furtherance of this conspiracy, the individual Defendants committed overt acts as alleged herein, including but not limited to falsely and maliciously investigating, harassing and harming Plaintiff in direct retaliation for Plaintiff's protected First Amendment activities, and in violation of Plaintiff's Fourteenth Amendment Due Process and Equal Protection rights.

123.    Said acts of Defendants were undertaken willfully, maliciously and deprived Plaintiff of his rights under the First and Fourteenth Amendments and 42 U.S.C., Section 1983.

124.    Said conspiracy proximately caused said Constitutional violations and other injuries, including but not limited to pain and suffering, mental anguish, legal expenses, loss of income and loss of use of income as alleged herein.

*WHEREFORE,* Plaintiff respectfully prays for the following relief:

A.    Defendants are adjudged to have conspired to violate Plaintiff's constitutionally protected rights as alleged herein and each Defendant is ordered to pay compensatory damages in an amount in excess of five million dollars or such greater amount to be determined by the Court;

B.    Defendants are ordered to pay punitive damages in excess of twenty-five million dollars or such greater amount as ordered by the Court;

C.    Statutory damages as allowed by law;

D.    Exemplary damages; *and*

E.    Such further relief as allowed by law including court costs and fees and the functional equivalent of attorney fees as authorized by 42 U.S.C., Section 1988.

## VIII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

22

125.    Plaintiff alleges paragraphs one through one hundred and twenty four as if alleged herein and continues as follows:

126.    The conduct of the individual Defendants as alleged herein were extreme and outrageous, were done intentionally, willfully and wantonly, and/or knowing that there was a high probability that their conduct would cause Plaintiff emotional distress.

127.    As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff was injured and experienced severe emotional distress constituting intentional infliction of emotional distress under Illinois law.

*WHEREFORE,* Plaintiff respectfully prays for the following relief:

A.    Defendants are adjudged to have violated Plaintiff's rights against intentional infliction of emotional distress and each Defendant is ordered to pay in their individual capacity compensatory damages in an amount of five million dollars or such greater amount to be determined by the Court;

B.    Defendants are ordered to pay punitive damages in their individual capacity in an amount of twenty-five million dollars or such greater amount as ordered by the Court;

C.    Exemplary damages;

D.    Statutory damages as ordered by the Court; and

E.    Such further relief as allowed by law including court costs and fees, and the functional equivalent of attorney fees as authorized by 42 U.S.C., Section 1988.

## IX

### COUNT NINE
### EQUAL PROTECTION UNDER THE LAW VIOLATION
### UNITED STATES CONSTITUTION – 42 U.S.C., Section 1983

128.    Plaintiff alleges paragraphs one through one hundred and twenty seven as if alleged herein and continues as follows:

129.    The acts of the Defendants were irrational and wholly arbitrary.

130.    The actual motivation for the above alleged acts were unrelated to legitimate motives but, rather, was motivated by improper motives including but not limited to ill will and personal animus towards the African American Plaintiff. Said treatment of Plaintiff constituted a totally illegitimate animus by Defendants completely unrelated to any legitimate objectives.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

A.    Defendants are adjudged to have violated Plaintiff's right to equal protection under the law and each Defendant is ordered to pay in their individual capacity compensatory damages in an amount of five million dollars or such greater amount to be determined by the Court;

B.    Defendants are ordered to pay punitive damages in an amount of twenty-five million dollars or such greater amount as ordered by the Court;

C.    Statutory damages as ordered by the Court;

D.    Exemplary damages; and

E.    Such further relief as allowed by law including court costs and fees, including the functional equivalent of attorney fees as authorized by 42 U.S.C., Section 1988.

## X

## COUNT TEN
## FALSE LIGHT

131.    Plaintiff alleges paragraph one through one hundred and thirty as if alleged herein and continues as follows:

132.    Under Illinois law, there is a recognized cause of action for false-light invasion of privacy where (1) a party is put in a false light before the public as a result of the Defendants' actions; (2) the false light would be highly offensive to a reasonable

24

person; and (3) the Defendants acted with knowledge that the statements were false or made with reckless disregard for whether the statements were true or false.

133.    Defendants' wrongful statements and conduct cast Plaintiff in a false light before the public and/or his fellow employees, associates, neighbors, his ministry and colleagues by stating that Plaintiff may have filed a false police incident report in retaliation to be arrested; and falsely stating to the public that Plaintiff has a Federal Arrest Warrant for his arrest; or that Plaintiff had no jewelry or a reduced amount of jewelry or property loss had been removed from Plaintiff's residence; and that protocol allowed Defendants and "Operation Falcon" operatives to be in Plaintiff's home.

134.    Defendants' wrongful statements and conduct cast Plaintiff in a false light before the public and/or his fellow employees, associates, neighbors, his ministry and colleagues by stating that Defendants and "Operation Falcon" operatives entered Plaintiff's residence through an opened screen door, when the truth shows that Plaintiff lived on the second floor and Defendants accessed a ladder to the second floor roof of the condominium building and cut the screen to unlock Plaintiff's veranda door at 6:00 a.m., while all of the African American Plaintiff's white neighbors watched in shock and racial indifference.

135.    Defendants knew or acted with reckless disregard as to the truth of their statements and truth behind the false charges, conduct and allegations brought against the African American Plaintiff.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

A.    That Defendants are adjudged by this Court to have violated Plaintiff's rights prohibiting false-light and each Defendant is ordered to pay in their individual capacity compensatory damages in an amount of five million dollars or such greater amount as ordered by the Court;

B.    Defendants are ordered to pay punitive damages in an amount of twenty-five million dollars or such greater amount as ordered by the Court;

C.    Statutory damages as ordered by the Court; and

D.    Such other relief as ordered by the Court including court costs and fees.

## JURY DEMAND

Plaintiff hereby demands that this matter is tried by a jury.

*Respectfully submitted,*

_____
LAMAR C. CHAPMAN III, Plaintiff, *Pro Se*

**DATED: March 27, 2008**

Non-Attorney, Non-Lawyer
Plaintiff, *Pro Se*
LAMAR C. CHPMAN, *Solo Fides*
Alexander, Cavanaugh & Block, LLC
1314 Kensington Road
Post Office Box 5232
Oak Brook, IL 60523-5232
Telephone (630) 881-1936
Email: lasallecompanies@aol.com

File Date: _3-27-2008_

Case No: _07cv 7232_

ATTACHMENT # _____

EXHIBIT _Plaintiff's, A_____

TAB (DESCRIPTION)

_____

Case 1:07-cv-07232    Document 1    Filed ...

AO 442 (Rev. 6/97) Warrant of Arrest

# United States District Court
## Northern District of Illinois
### Eastern Division

United States of America

v.

Lamar Chapman

**WARRANT FOR ARREST**

Case Number: 04 cr 307-1

To:    The United States Marshal
       And any Authorized United States Officer

**YOU ARE HEREBY COMMANDED** to arrest **Lamar Chapman** and bring him or her forthwith to the nearest magistrate judge to answer a(n)

Indictment    Information    Complaint    X Order of court    Violation Notice
Probation     Violation Petition

charging him or her with:    **Failure to surrender for sentencing**
                             **(See Attachment)**

in violation of Title United States Code, Section(s)

Yvette Pearson Issuing Officer                    **U.S. Deputy Clerk**

_(signature of Issuing Officer)_

Bail fixed at $                    February 14, 2005; Chicago

                                   , Judicial Officer

FILED
JAN 17 2005

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at | | |
| Date Received | Name and Title of Arresting Officer | Signature of Arrest Officer |
| Date of Arrest | | |
| 02/13/06 | SUSAN AABTH G. BETHONC USM | |

2006 FEB 14 PM 2: 59

UNITED STATES MARSHAL

_Exhibit A_

**File Date:** _3 - 27 - 2008_

**Case No:** _07cv 7232_

**ATTACHMENT #** _____

**EXHIBIT** _Plaintiff's B_

**TAB (DESCRIPTION)**

_____



**Daniel B. Pritchett**
President

**Randall Petersen**
Chief of Police

# FRANKLIN PARK POLICE DEPARTMENT
9545 West Belmont Avenue
Franklin Park, Illinois 60131
(847) 671-8200

## Livescan correction form

**Attach copy of the arrest report to this form**
Fill out proper correction and fax to offices below

Livescan Chicago (CHRISC)
Attn: Joe Perfette – Fax 312 745 6921

Livescan State Police (BFI)
Attn: Administrator Fax 815 740 5170

DCN# _016205654_     TCN# _LS100701620565 4_

Arrestees name as it appears on Livescan arrest report: _CHAPMAN, LAMAR C._

Descriptions of what needs to be changed:
_REMOVE OUT OF STATE WARRANT FROM COUNT ONE – LEAVE_
_AS CLASS A.    NOT A WARRANT_

To be corrected from:
(a) _720 ILCS 5.0/21-2    WARRANT # 04CR307-1_

(b) _____

(c) _____

To be corrected to:
(a) _720 ILCS 5.0/ 21-2_

(b) _____

(c) _____

Respectfully,

_[signature]_
Police Officer

_____
Chief of Police
Franklin Park Police Department

File Date: _____3-27-2008_____

Case No: _____07cv 7232_____

ATTACHMENT # _____

EXHIBIT _Plaintiff's C_____

TAB (DESCRIPTION)

_____

| Incident No. | **Hinsdale Police Dept** | Print Date : 05/18/2007 |
|---|---|---|
| 2006 - 3682 | Incident Report | Print Time : 8:56:10 AM |

## Incidents

| CODE | TYPE OF INCIDENT | DATE OCCURRED | DAY OCC | TIME OCC | | |
|---|---|---|---|---|---|---|
| I0610 | BURGLARY | 04/08/2005 - 04/08/2005 | 6 - 6 | 06:30:00 - 07:00:00 | | |
| | | DATE REC | TIME REC | DISP | ARR | COMP |
| | | 05/10/2006 | 13:26:00 | 13:26:00 | 13:42:00 | 14:11:00 |
| | | LOCATION OCCURRED | | CODE | CITY | SEC |
| | | ▮▮▮▮▮▮▮ | | 796 | Hinsdale | NO |

## Officers

| Code | ON | Badge No | Officers | Agency or Address | Phone |
|---|---|---|---|---|---|
| 26 | ☐ | CL220 | Leuver, Charles | Hinsdale Police Dept | |

## Persons

| Code | ON | Name (Alias) Business/Organization | Address | DOB | S | R | Phone |
|---|---|---|---|---|---|---|---|
| CV | ☐ | Chapman, Lamar C | ▮▮▮▮▮▮▮1 | 070853 | M | B | (C) (630) 881-1936 |
| W | ☐ | Rehberd, Garth US Marshals | 219 S Dearborn St Apt/Unit 2444 Chicago IL 60604 | | | | (B) (312) 353-5290 |
| W2 | ☐ | Walden, Margaret US Marshals - Division Supervisor | 219 S Dearborn St Apt/Unit 2444 Chicago IL 60604 | | | | (B) (312) 353-5290 |

## Loss Of Property

| Item | Qty | Brand Name | Model | Type | Description | Est. Value |
|---|---|---|---|---|---|---|
| 1 | 1 | Daniel Jean Richard | | Watch | Daniel Jean Richard Mens Wristwatch | $3,900.00 |

| Insurance Company, if known: | Information Source Name: Chapman |
|---|---|

## Follow Up

| Date Of Follow Up | Time Of Follow Up |
|---|---|
| 05/17/2006 | 13:26:00 |

## Narrative :

In summary, I spoke to Chief Bloom reference this case. He provided me with copies of the documents that Chapman had sent this department reference his complaint. Chief Bloom related that in previous correspondence Chapman never mentioned that any items were missing.

On 5/11/06 I contacted the Fugitive/Warrants division of the US Marshals Office in Chicago. I was advised Rehberd had been transferred to another division. I explained why I was calling. I spoke to the on-duty warrant officer. I asked if Chapman was still a fugitive. He said he was not sure and checked their records. He said there were no current warrants. I asked if there was an active warrant for Chapman on 4/8/05 that was issued on 2/14/05. I was advised there was reference a case where he was supposed to surrender for a sentence in the federal penitentiary. I located a number to the division which Rehberd was assigned. I spoke to the receptionist at that division. I asked for a number for him and I was provided his cell number. I contacted Rehberd at that number and he remembered speaking with me in 2005 when Chapman was supposed to come in to meet with Chief Bloom. I explained why I was calling and asked if he remembered who the other agents were at the Chapman home on 4/8/05. He said off the top of his head he could not but did say he would have another agent fax me a copy of the report. I explained that Chapman was claiming that the agents on the scene that day took some property from the home. He vehemently denied they took anything. He said they made entry through an unlocked patio door and looked for Chapman. He said he even spoke to his neighbors. I thanked him for his time and he said he would make sure I get their report from that incident. I received a copy of the report and read it. The report indicated that there was an active warrant for Chapman. The report indicated that there were 2 US Treasury Agents with Rehberd and 3 other US Marshals at the apartment. The report indicated entry was made via an unlocked patio door. It indicated the apartment was searched for Chapman and the agents left immediately after they determined he was not there. It was also noted in the report that they secured the apartment. Rehberd indicated in the report that he did speak with Chapman's neighbor. The facts of the report coincided with his brief account of the incident at the home over a year ago. He suggested Chapman was filing this complaint to get back at the US Marshals Office for him getting arrested.

After receiving the report, I contacted the US Marshals Office to speak with a supervisor to verify their protocol and inquire if proper protocol was followed in Chapman's case. I spoke to US Marshal Supervisor Margaret Walden who indicated that

| Incident No.<br>2006 - 3682 | **Hinsdale Police Dept**<br>Incident Report | Print Date : 05/18/2007<br>Print Time : 8:56:11 AM |
|---|---|---|

she was familiar with Chapman. I informed her why I was calling and what I was doing. I stated that I wanted to verify that their proper protocol was followed in the case. She said indeed it was. She stated that they verified that was his current address and had 2 Treasury agents with them. She said he also located Chapman's vehicle in the garage. I informed her that I was thankful for her help with the matter. I also told her that I would be contacting Chapman as well.

On 5/17/06 I contacted Chapman via his cell phone. I identified myself and informed him that I was assigned to the case. I started the conversation with Chapman by telling him I spoke to the US Marshals Office in Chicago to verify proper protocol was followed in his case. I also said that I verified that there was an active warrant at the time the Marshals were at his home. Chapman said that was not true. He said that the warrant did not have a judges signature. He said that he went to the federal building on 2/7/05 and waited to be arrested but the Marshals would not arrest him because they did not have a warrant for him. I said that date was irrelevant and the warrant was issued on 2/14/05. I said that I had the correspondence that he sent to Chief Bloom. I explained to Chapman that I was having a problem with the timeliness of the report. I asked why he waited a year to file the report. Chapman said he tried to file the report 4 times as indicated by his correspondence. I said that there was no mention of missing items in the earlier correspondence. I said I find it odd that it is just now that the items are being reported as missing after he had been arrested by the US Marshals Service. Again he said he tried reporting the incident but we would not take a report. I read the correspondence letter dated 4/17/05 to him. I said that we do not make appointments by letter to go to someone's home on a specific date and time to take a report. I explained that if it were me, I would have immediately called the police to file a report when the items were discovered missing. I further explained that on the date that the meeting was scheduled with Chief Bloom, there was an active warrant for him and that was why he declined to come in to the station. I told Chapman that Rehberd and the agents at his home did not commit any crimes. Chapman said that he was taking that up with the US Senate and has filed complaints in Washington DC reference the actions of the US Marshal. Chapman said that the items are missing. I asked him if he was filing the report for insurance purposes. He said he was filing and needed a report number. I told Chapman that there has been numerous burglaries in the past year. He was very surprised. I said that we have no exact time frame when these items went missing. I said with the delay on reporting the items missing the likelihood of the items being recovered are slim to nil. Chapman said he had furnished the initial reporting officer with the serial number for the watch. I said I did not have that information and there was no mention of it in his report. I was provided with the serial number for the Daniel Jean Richard watch. I had TCO Hogan enter the watch into LEADS under LEADS # A06A9667. I said I would check the pawn listings but said there was no guarantee. I again confirmed with Chapman that he had the report number. He said he did and I told him to use that for the insurance.

The criminal trespass on 4/8/05 is unfounded. The US Marshals had legal authority to be there because there was an active arrest warrant for Chapman. I do not have any evidence that a burglary took place or that this is a false report. The fact that a crime was being reported over a year later makes me suspicious as well as the circumstances surrounding the incident. Chapman said himself that it seems as if he was filing this report to get back at the US Marshals although he said he was not using this to do that. I believe that Chapman is filing a false report but I do not have the evidence to support that charge. I am leaving the case open a while to see if the watch can be located to prove this case either way.

Case Pending

| Incident No : 2006 - 3682 | *APPROVED* | Page    2    Of    2 |
|---|---|---|