07-30-4778                                                                                    ARDC No. 01144642

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAMAR C. CHAPMAN, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.   07 CV 7232 |
| ) | |
| THE VILLAGE OF HINSDALE, ILLINOIS ) | Judge Lindberg |
| an Illinois Municipal Corporation, ) | Magistrate Judge Brown |
| THE HINSDALE POLICE DEPARTMENT, ) | |
| and UNKNOWN OTHERS, ) | |
| ) | |
| Defendants. ) | |

## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)[1]

NOW COME the defendants, THE VILLAGE OF HINSDALE, ILLINOIS, an Illinois municipal corporation, and THE HINSDALE POLICE DEPARTMENT (hereinafter collectively referred to as "HINSDALE"), by and through their attorneys, HARTIGAN & CUISINIER P.C., and move this Honorable Court to dismiss plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and in support thereof hereby state as follows:

1.   On April 19, 2007, plaintiff filed a Complaint against the defendants under case number 07 CV 2175.  (Attached hereto and made a part hereof as Exhibit "A" is a true and correct copy of said Complaint.)

2.   That on April 30, 2008 the plaintiff was granted leave to file his First Amended Complaint.

---

[1] This brief is intentionally limited to 15 pages in accordance with rule 7.1 of the Local Rules for the United States District Court for the Northern District of Illinois.

3.     The Complaint pleads the following Counts:

| | |
|---|---|
| Count I | Injunctive Relief; |
| Count II | Violation of the Fourth Amendment – Section 1983; |
| Count III | Violation of the Fifth Amendment – Section 1983; |
| Count IV | Violation of the Eighth Amendment – Section 1983; |
| Count V | Violation of the First Amendment – Section 1983; |
| Count VI | Violation of the Fourteenth Amendment – Section 1983; |
| Count VII | Conspiracy – Section 1983; |
| Count VIII | Intentional Infliction of Emotional Distress; |
| Count IX | Equal Protection – Section 1983; |
| Count X | False Light. |

3.     On May 25, 2007, the defendants filed a motion to dismiss the plaintiff's Complaint asserting that CHAPMAN did not obtain leave of the Executive Committee to file the Complaint, and also asserting that the claim was time barred.

4.     On June 4, 2007, the Honorable Judge George Lindberg dismissed the action, without prejudice, due to CHAPMAN's failure to comply with the filing procedures set forth in the Executive Committee's order of September 17, 2002.  The same order denied the defendants' motion to dismiss as moot.  (See order attached hereto as Exhibit "B".)

5.     On June 11, 2007, the plaintiff filed a motion for reconsideration which was denied by the Honorable Judge George Lindberg on June 13, 2007.  (See order attached hereto as Exhibit "C".)

6.     On June 15, 2007, CHAPMAN filed a second motion for reconsideration which was denied on June 21, 2007.  (See order attached hereto as Exhibit "D".)

7.     Apparently, according to the plaintiff's motion to reconsider, on December 12, 2007, the Executive Committee of the United States District Court for the Northern District of Illinois granted plaintiff's motion for leave to file the above lawsuit now captioned 07 CV

7232. (See Executive Committee order attached hereto as Exhibit "E".)

8. The Amended Complaint is attached. (Attached hereto and made a part hereof as Exhibit "F" is a true and correct copy of the First Amended Complaint.)

9. On January 18, 2008, CHAPMAN filed with the clerk of the court a motion to issue summons, and on January 22, 2008, the Honorable Judge George Lindberg dismissed the above captioned lawsuit and denied all pending motions. (See Exhibit "G".)

10. On January 30, 2008, plaintiff presented his motion to reinstate the above captioned lawsuit which was granted by Judge Lindberg. (See Exhibit "H".)

11. The defendants would note parenthetically that CHAPMAN had what could only be described as a parallel lawsuit filed against the United States Marshals for the Northern District of Illinois under case number 07 C 2174 which was dismissed by Judge Castillo. The plaintiff evidently refiled that lawsuit against the U.S. Marshals now styled <u>Lamar Chapman v. United States Marshal for the Northern District of Illinois</u> and pending under case number 07 C 6531. On January 15, 2008, Judge Castillo reinstated the lawsuit and issued summons against the United States Marshals. (See Exhibit "I".)

**FACTS ALLEGED IN THE COMPLAINT**

The Plaintiff alleges, *inter alia*, that on February 4, 2005, plaintiff was denied the requested benefit of counsel in a criminal proceeding (see Exhibit "J") in the United States District Court for the Northern District of Illinois, Eastern Division, Judge Zagel presiding. (See attached Exhibit "F", a copy of the First Amended Complaint, para. 19.)

The allegations further allege that on February 4, 2005 the plaintiff requested the court to amend the plaintiff's February 7, 2005 surrender date, and that on February 7,

3

2005, plaintiff made himself available to be arrested but was not because, according to the Complaint, a warrant for the arrest had not been issued by the court. (See Exhibit "F", para. 21.) Plaintiff alleges that on February 14, 2005 a federal warrant was prepared by a clerk for the United States Marshal Service. (See Exhibit "F", para. 22.) Plaintiff alleges that on or before April 8, 2005, the plaintiff's residence was under surveillance by the defendants (Exhibit "F", para. 27.) The Complaint alleges that on April 8, 2005 unknown officers from the HINSDALE POLICE DEPARTMENT went to the gated community of his residence and questioned the gatehouse guards and security management of the whereabouts of the plaintiff (Exhibit "F", para. 28.) CHAPMAN alleges that on April 8, 2005, the CHIEF OF POLICE and the Deputy Chief of Police authorized JOHN DOE officers to place a ladder on the side of the plaintiff's condominium building and, with the assistance of the United States Marshals, cut the screen of the second floor veranda and entered plaintiff's residence. The plaintiff claims that in the process his home was searched and "ransacked" and various items of jewelry were taken. (See Exhibit "F", para. 31-40).

**ARGUMENT**

I. **CHAPMAN'S COMPLAINT SHOULD BE DISMISSED AS IT WAS FILED BEYOND THE TWO-YEAR STATUTE OF LIMITATIONS.**

The instant motion will address only the insufficiencies that appear on the face of the Complaint. However, the arrest warrant referenced in the plaintiff's Complaint was not executed by HINSDALE, but rather was executed by the United States Marshal Service, a fact evidently acknowledged in correspondence directed to Officer Garth Rehberd on April 9, 2005. (Attached hereto and made a part hereof as Exhibit "K" is a

4

true and correct copy of said correspondence.)

Moreover, the plaintiff's Complaint against the United States Marshal Service, both that pending under 07 C 2174 and the refiling under 07 C 6531 (Exhibit "M"), asserts that the warrant was prepared by Michelle Warner, a clerk for the United States Marshal Service, and was submitted to the Federal Bureau of Investigation. The Complaint against the U.S. Marshal Service also asserts that on or before April 8, 2005, plaintiff's name was placed on United States Marshal Service's list of wanted fugitives under the code name "Operation Falcon." The Complaint further alleges that Garth Rehberd, David Pearlman, Michelle Uthe, and unknown others came into the plaintiff's gated community and thereafter, on April 8, 2005, the above individuals secured a ladder and entered the plaintiff's residence by cutting a screen, searched his home, interrogated his neighbors, and took personal property. The Complaint asserts the same constitutional violations asserted against HINSDALE. This Court may, of course, take judicial notice of the plaintiff's Complaint against the U.S. Marshal Service. Palay v. United States, 349 F.3d 418 (7th Cir. 2003).

The allegations contained in the plaintiff's Complaint, at least against HINSDALE, appear to arise out of actions occurring on April 8, 2005. The plaintiff filed his original Complaint in this matter on April 19, 2007, notwithstanding the fact that he failed to obtain leave of Court to do so. (See Exhibit "L".) When Congress enacted 42 U.S.C. §1983, it failed to specify the Statute of Limitations for §1983 actions. The Supreme Court has concluded, however, that the appropriate Statute of Limitations for §1983 claims is the limitations period for personal injury claims in the state where the alleged constitutional violation occurred. Wilson v. Garcia, 471 U.S. 261, 269, 105 S.Ct. 1938, (1985). After this

5

rule was originally announced, some confusion remained among the circuits as to the relevant limitations period when there were multiple Statutes of Limitation that were potentially applicable to personal injury claims in a particular state. Subsequently, the Supreme Court held that when that situation arises, the general or residual Statute of Limitations governing personal injury claims should apply to Section 1983 actions. Owen v. Okure, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989).

The Seventh Circuit has ruled that the Illinois two-year Statute of Limitations for personal injury claims found in §13-202 of the Illinois Code of Civil Procedure should be applied to §1983 actions. Farrell v. McDonough, 966 F.2d 279 (7th Cir. 1992); Ashafa v. City of Chicago, 146 F.3d 459 (7th Cir. 1998).

Although federal law governs the question of the accrual of constitutional torts, the standard rule is that the accrual occurs when the plaintiff has a complete and present cause of action. Wallace v. Kato, 127 S.Ct. 1091, 1095 (2007). Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc., 522 U.S. 192, 201, 118 S.Ct. 542 (1997). State Statutes of Limitation and tolling doctrines apply once accrual has been determined. Hardin v. Straub, 490 U.S. 536, 538-539 (1989); Gonzalez v. Entress, 133 F.3d 551, 554 (7th Cir. 1998).

Because the allegations of the Complaint allege a cause of action against HINSDALE arising on or before April 8, 2005, the original Complaint, filed on April 19, 2007, is beyond the two-year Statute of Limitations applicable to federal civil rights actions which accrued in the State of Illinois. Therefore, without even addressing whether the Complaint was properly filed on April 19, 2007 (because the plaintiff had not received prior permission to do so pursuant to the Executive Committee order entered on September 17, 2002),

taking the filing on April 19, 2007 as the filing date, for the purposes of this argument, the Complaint is nevertheless untimely.

Any argument that the Complaint was timely because it was mailed on April 9, 2007 (see Motion to Reconsider filed 6/11/07 attached hereto and made a part here of as Exhibit "M"), and that same constitutes a filing, is unpersuasive.  Pursuant to both Illinois law and federal law, the plaintiff had until April 9, 2007 to file a Complaint arising out of actions occurring on April 8, 2005.  As April 8, 2007 was a Sunday, the plaintiff would have until April 9, 2007.  See 5 ILCS 70/1.11, which provides as follows:

> The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is a Saturday or a Sunday or is a holiday as defined or fixed in any statute now or hereafter in force in this state, and then it shall also be excluded.  If the day succeeding such Saturday, Sunday or holiday is also a holiday or a Saturday or Sunday, then such succeeding day shall also be excluded.

See also, FRCP 6.

Had CHAPMAN filed his Complaint on April 9, 2007, the Complaint would arguably be timely, since April 8, 2007 was a Sunday.  CHAPMAN, however, chose to mail for filing on April 9, 2007.  That mailing is not "filing" under either state or federal law.

In a case decided on May 18, 2007, the Illinois Appellate Court provided that the so-called "mailbox rule," which allows a document to be considered filed on the date it is placed in the mail, does not apply to new lawsuits, including claims that are refiled after a voluntary dismissal.  In Wilson v. Brant, 374 Ill.App.3d 306, 869 N.E.2d 818 (1st Dist. 2007), the Court affirmed that the trial court's dismissal of a case on the basis that the filing was not timely even though it was placed in the mail exactly one year after the voluntary dismissal, but was not file stamped until more than a year after the voluntary dismissal.  It is

7

HINSDALE's contention that the federal court, which adopts state law statutes of limitation, would find similarly.

In any event, CHAPMAN fares no better applying the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 5(e) provides the definition of filing with the court. That rule provides, in relevant part: "The filing of papers with the court as required by these rules shall be made by <u>filing them with the clerk of court</u>. . . ." [Emphasis added.] FRCP 5(e).

Although FRCP 5 addresses service of papers, other than the original Complaint, by mail, there is no corresponding rule providing that a Complaint is timely filed when placed in the mail. In fact, the Federal Rules provide that the filing is either by electronic means, not applicable in this case, or shall be made by filing with the clerk of the court. HINSDALE would note that the "mailbox rule" does apply in state court for appeals. Specifically, Illinois Supreme Court Rule 373 provides:

> Unless received after the due date, the time of filing records, briefs or other paper required to be filed within a specified time will be the date on which they are actually received by the clerk of the reviewing court after the due date, the time of mailing shall be deemed the time of filing . . .

This action, however, is not an appeal governed by this rule. The Federal Rules of Appellate Procedure, in contrast, provide for filing by mail addressed to the clerk, but also provide that filing is not timely unless the clerk receives the papers within the time fixed for filing. Therefore, mailing the Complaint for filing does not constitute filing within the applicable two-year Statute applicable to state law causes of action.

## II. THERE IS NO COGNIZABLE CONSTITUTIONAL VIOLATION PLEAD AGAINST HINSDALE FOR FAILURE TO INVESTIGATE.

The Complaint seems to be, on its face, filed beyond the applicable Statute of Limitations; substantial authority supports the dismissal of a suit under 12(b)(6) where the facts alleged in the Complaint make clear that the claims are time barred. In Kauther SDN BHD v. Sternberg, 149 F.3d 659 (7th Cir. 1998), for example, the Seventh Circuit held that various federal securities claims were appropriately dismissed as time barred pursuant to Rule 12(b)(6) where the facts alleged made clear that the claims arose beyond the Statute of Limitations. Kauther SDN BHD, 149 F.3d at 670-71 (collecting extensive circuit court precedent from the Seventh Circuit and sister circuits), accord Walker v. Thompson, 288 F.3d 1005, 1009 (dismissal under Rule 12(b)(6) on Statute of Limitations grounds proper where averments establish the claims are untimely.)

Out of an abundance of caution, HINSDALE will address one issue that seems to have run through either the plaintiff's Complaint or correspondence directed to HINSDALE following the putative service of the arrest warrant by the U.S. Marshal Service. The claim, although not fully articulated in the Complaint, seems to be that HINSDALE refused to take a complaint by CHAPMAN against the U.S. Marshal Service for activities conducted by the U.S. Marshal Service in an attempt to arrest CHAPMAN. (The facts of the U.S. Marshal's activities, as alleged by the plaintiff, are set forth in case number 07 C 6531 pending before Judge Castillo.)

In many §1983 claim cases, the claimant urges that his constitutionally protected rights were violated as a result of the state's failure to provide police, fire, child protection, or other services that may have prevented injuries that were directly inflicted by a third

9

party. However, the Constitution is a charter of negative liberties; it tells the state to let people alone. It does not generally require that the state provide services, even such elementary services as maintaining law and order. Bowers v. Devito, 686 F.2d 616 (7th Cir. 1983). Collins v. City of Harker Heights, Tex., 503 U.S. 115, 112 S.Ct. 1061 (1992). DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 109 S.Ct. 998 (1989). Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452 (1982).

There exists an exception to the so-called DeShaney "no duty" rule. Although not applicable to the case *sub judice*, there is an obligation to provide protection to persons in state custody, such as prisoners and involuntary mental patients. Some courts have extended the duty to cases in which the state had a "special relationship" with a specific individual. Ellsworth v. City of Racine, 774 F.2d 182 (7th Cir. 1985) (noting that the contours of the special relationship doctrine were "hazy").

There is, therefore, no obligation on HINSDALE except in some limited circumstances, to act on complaints of CHAPMAN or any other individual. The Seventh Circuit has provided a summary of a municipality's duty to act:

> We have recognized that a right and corollary duty to provide protective services may arise out of special relationships created or assumed by a municipality in regard to particular people . . . We have held that: the Constitution creates a duty on the part of police officers to protect minor children from immediate hazards after police officers arrest the children's guardian (citation omitted.); state mental hospitals are required by the Constitution to protect patients from known risks of assault (citation omitted); police officers are required by the Constitution to render aid to a victim who is being beaten by the officer's colleague (citation omitted); and that state prisons are required by the Constitution to provide prison inmates with basic protective service under certain circumstances (citation omitted.) The relevant governmental organizations face potential liability in each of these cases precisely because they had created or assumed special relationships with the plaintiffs involved in each case.

Ellsworth, 774 F.2d at 185.

So if CHAPMAN'S Complaint against HINSDALE is that they failed to prepare a report, or investigate his claims that property was taken by the U.S. Marshals during their attempted execution of an arrest warrant, that does not state a constitutional claim against HINSDALE.

The law is clear that there is no constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime. Williams v. Blagojevich, 2008 WL 4266 55 (D.S. Ill. 2008); Doe v. Mayor and City Council of Pocomoke City, 745 F.Supp. 1137, 1138 (D. Md. 1990).  Such discretionary public duties are enforced by public opinion, policy and the ballot, not litigation against individual officers and their civic employers.  Id.  See also, Sattler v. Johnson, 857 F.2d 224, 226 (4th Cir. 1988) (individual did not have a constitutional right under the Equal Protection clause to be presented with information to enable a civil suit or to have a crime prosecuted.)  Walker v. Schmoke, 962 F.Supp. 732, 733 (D. Md. 1997).  There is no federal Appellate Court, including the Supreme Court, which has recognized that there is a federally enforceable right for the victim to have criminal charges investigated at all, let alone with vigor or competence.  Fulson v. City of Columbus, 801 F.Supp. 1 (S.D. Ohio 1992).  A public official charged with the duty to investigate or prosecute a crime does not owe that duty to any one member of the public and, thus, no one member of the public has a right to compel a public official to act.  To the extent that the Complaint against HINSDALE is that they failed to investigate CHAPMAN's allegations against the U.S. Marshals, which does not state an

11

actionable constitutional violation.[2]  The Seventh Circuit does not recognize a claim for "inadequate police investigatory work" in the absence of some other recognized constitutional violation.  Jacobson v. National Railroad Passenger Corp, 97 C 6012, 1999 WL 1101299 (N.D. Ill. Nov. 29, 1999); Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir. 1984).

### III. THE PLAINTIFF'S STATE LAW CLAIMS ARE ALSO TIME BARRED AND SUBJECT TO IMMUNITY.

The plaintiff has also filed several new state law causes of action all of which must be dismissed.  Intentional Infliction of Emotional Distress – Count VIII and False Light – Count X.

As a preliminary matter, Section 8-101 of the Tort Immunity Act provides that there is a one-year Statute of Limitations for causes of action against municipal entities or their employees under Illinois law.  (745 ILCS 10/8-101.)  The actions of the police, as alleged in the Complaint, occurring on or before April 8, 2005, would therefore be time barred.  Moreover, the plaintiff's new claims, and claims against new defendants, are time barred.  FRCP 15(c)(3) applies to amendments which change the parties being sued; thus, claims against correctional officers formerly identified in the Complaint as "unknown unit officers" were time barred.  Delgado v. Clark, 93 F.3d 339 (7th Cir. 1996); Baskin v. City of Des Plaines, 138 F.3d 701 (7th Cir. 1998).  (The plaintiff did not make a mistake concerning person's identity, but simply did not know the person's identity when he filed the Complaint, therefore, amendment did not relate back.)  Maior v. Koletsos, 823 F.Supp. 497 (N.D. Ill.

---

[2] Without regard to the jurisdiction of a local municipality's authority to investigate the U.S. Dept. of Justice (the U.S. Marshal Service.)

19930. Therefore, the naming of the individual defendants is untimely, under both federal or state law. <u>Bogseth v. E.M. et al.</u>, 166 Ill.2d 507, 655 N.E.2d 888 (Ill. 1995) (naming "John Does" does not toll statute); <u>Hailey v. Interstate Machinery Co.</u>, 121 Ill.App.3d 237, 459 N.E.2d 346 (3rd Dist. 1983). The actions of the police officers occurring, according to the Complaint, on April 18, 2005 and May 16, 2006 (See Complaint 30-40, 66-69) would be barred by the one-year Statute of Limitations contained in 8-101. The defendants note that there is no remedy for his claimed FOIA requests as FOIA contains its own provisions for enforcement. MR. CHAPMAN was given documents responsive to his requests before court, the tendering of such documents made of record on February 27, 2008.

There is another reason why the plaintiff's claims of False Light must be dismissed. Section 2-107 of the Tort Immunity Act (745 ILCS 10/2-107) provides as follows:

> A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or other electronic transmission, or in a book or other form of library material.

The court in <u>Ramos v. City of Peru</u>, 333 Ill.App.3d 75, 775 N.E.2d 184 (3rd Dist. 2002), ruled that the immunity contained in 2-107 immunized defamation, false light, invasion of privacy and personal injury claims.

At least two other provisions of the Tort Immunity Act would apply to any individual officers accused of making false statements. 2-106 of the Tort Immunity Act (745 ILCS 10/2-106) applies to oral promises or misrepresentations irrespective or whether they were negligently or intentionally made. <u>Village of Bloomingdale v. CDG Enterprises</u>, 196 Ill.2d 484, 752 N.E.2d 1090 (2001) and Section 2-210 of the Tort Immunity Act (745 ILCS 10/2-210). Immunity was applied to a defamation action applying 2-210 where the plaintiff

13

alleged that the defendant negligently made certain defamatory statements. King v. City of Chicago, 324 Ill.App.3d 856, 755 N.E.2d 143 (1st Dist. 2001).)

## IV.   COUNT VII – CONSPIRACY

The plaintiff's allegations of conspiracy are insufficient. In order to prevail on his conspiracy claim, the plaintiff must prove: 1) an express or implied agreement among the defendants to deprive him of his constitutional rights; and 2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement. Scherer v. Balkema, 840 F.2d 437, 442 (7th Cir. 1998), see also Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998). Although a conspiracy may be demonstrated by circumstantial evidence, mere conjecture of a conspiracy is not sufficient. Amundsen v. Chicago Park District, 218 F.3d 712, 718 (7th cir. 2000). Bald assertions without any evidentiary support fail to demonstrate a conspiracy. Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999).

CHAPMAN's 1983 conspiracy claim fails for several reasons. First, as set forth above, it is filed beyond the two-year Statute of Limitations recognized for Section 1983 claims. Secondly, Section 1983 authorizes recovery for conspiracy to violate a clearly established right, not for the conspiracy itself. Hostrop v. Board of Junior College District 515, 523 F.2d 569, 576 (7th Cir. 1975).

To the extent to which the conspiracy claim is premised upon the contention that the defendants failed to fully investigate the incident, CHAPMAN's claim fails because the Seventh Circuit does not recognize a claim for inadequate police investigatory work in the absence of some other recognized constitutional violation. Jacobson v. National Railroad Passenger Corp, 97 C. 6012 (1999) W.L. 1101299 (N.D. Ill. Nov. 29, 1999) (failure to fully

14

investigate alleged misconduct "does not fall within the protection of the right to judicial access". Citing Bell v. City of Milwaukee, 746 F.2d 1205, 1261 (7th Cir. 1984).

WHEREFORE, the defendant respectfully requests this Honorable Court dismiss the plaintiff's Complaint with prejudice pursuant to Section 12(b)(6), and for such other and further relief as this Court deems just and proper.

WHEREFORE, for all the foregoing reasons, the defendants, THE VILLAGE OF HINSDALE, ILLINOIS, an Illinois Municipal Corporation, and THE HINSDALE POLICE DEPARTMENT, respectfully request this Honorable Court dismiss the plaintiff's Complaint with prejudice with costs assessed against the plaintiff, and for such other and further relief as this Court deems just and proper.

Respectfully Submitted,

/s/Patrick H. O'Connor
Patrick H. O'Connor, one of the attorneys for the defendants, The Village of Hinsdale, Illinois, an Illinois municipal corporation, and The Hinsdale Police Department

Russell W. Hartigan
Patrick H. O'Connor
HARTIGAN & CUISINIER P.C.
222 North LaSalle Street, Suite 2150
Chicago, Illinois 60601
(312)201-8880